**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brett D. LEAVEY, | ) No. CIV 02-2281-PHX-SMM |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| UNUM/PROVIDENT CORP., et al., | ) |
| Defendants. | ) |

Pending before the Court are Plaintiff's Motion for Reconsideration re Remittitur of Punitive Damages Award [Doc. No. 275] and Plaintiff's Motion to Expedite Ruling on Plaintiff's Motion for Reconsideration and to Extend Time for Plaintiff to Notify the Court Whether He Elects to Accept Remittitur [Doc. No. 276], both filed June 9, 2006.  After considering Plaintiff's Motions, the Court issues the following ruling.

**STANDARD OF REVIEW**

A district court may grant a motion to reconsider only in "highly unusual circumstances." School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).  Procedurally, motions to reconsider are generally treated as Rule 59(e) motions to alter or amend the judgment if they are filed within ten days after the Order. Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp., 248 F.3d 892, 898-899 (9th Cir. 2001); see FED. R. CIV. P. 59(e).  Reconsideration under Rule 59 is only appropriate where: (1) the district court is presented with newly discovered evidence; (2) the district court committed clear error in its decision; (3) the district court's decision was manifestly unjust; or (4) there

1  is an intervening change in controlling law. School Dist. No. 1J, 5 F.3d at 1262-63. A
2  motion for reconsideration may not be used to ask the Court "to rethink what the court had
3  already thought through – rightly or wrongly." See Defenders of Wildlife v. Ballard, 73
4  F.Supp.2d 1094, 1115 (D. Ariz. 1999) (citations omitted).

## DISCUSSION

In his Motion for Reconsideration, Plaintiff argues that the Court committed factual and legal error, and that the punitive damages award should be reinstated or the Court's remittitur of the punitive damages award should be altered. The Court will address Plaintiff's contentions in turn.

**A. Guidepost 1 of the Gore analysis: Reprehensibility of Defendants' Conduct**

First, Plaintiff argues that the Court committed factual and legal error in its analysis of the factors relating to the first guidepost of BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 562 (1996), reprehensibility of Defendants' conduct. Reprehensibility is assessed by examining five factors, and Plaintiff takes issue with the Court's analysis of three of those five factors.

1. First factor: Harm caused by Defendants

The first factor a court examines with respect to reprehensibility is whether the harm caused by Defendants was physical or economic. Id. at 576-577. Plaintiff contends that the Court's misunderstanding of the facts caused the Court to wrongly consider this factor, because the Court noted Plaintiff's "slight" physical injury to his hand in its reprehensibility analysis. (Mot. at 2-4.)

The Court recognizes that Plaintiff suffered two injuries to his hand, the first being accidental and the second being self-induced. Plaintiff testified first that his accidental injury was "slight" and then testified about his self-induced injury, where Plaintiff dropped a 45-pound weight on his hand to obtain narcotic prescriptions. The Court notes that Plaintiff himself did not testify that he was badly injured as Plaintiff's counsel suggests. Rather,

*counsel*'s questions implied the severity of the injury. (Tr. 1125:7-19.)[1] Plaintiff emphasizes in his Motion that his broken hand was "but one component of the physical injury [he] endured in the form of a relapse." (Mot. at 4.) Plaintiff's relapse was specifically identified in the Court's previous reprehensibility analysis. (May 26, 2006 Memorandum of Decision Order ("Order") at 20.)

The Court considers Plaintiff's broken hand and relapse in its analysis of this factor of reprehensibility, and notes that it previously took both of those injuries into account when arriving at the remitted compensatory and punitive damages awards. The Court's conclusion that Plaintiff's injuries were due, for the most part, to emotional distress or were economically related has not changed. Furthermore, the Court notes that it ultimately found Defendants' conduct to be reprehensible, but that a more modest award adequately serves the State's goals of deterrence and punishment. (Order at 23.) A more modest award continues to be appropriate, given the facts of this case.

2. Fourth factor: Whether Defendants' conduct involved repeated actions

The fourth reprehensibility factor a Court considers is whether a defendant's conduct involved repeated actions. <u>Gore</u>, 517 U.S. at 576-77. Plaintiff argues that the Court "failed to give appropriate weight to the repeated nature of the conduct in this case" and calls the Court's attention to Defendants' wealth. (Mot. at 6-7.) However, the Court specifically recognized in its previous Order that "Defendants' actions in this case represent one instance

---

[1] Plaintiff testified as follows:
A. I had a slight injury to my left hand, but it was certainly nothing that would require treatment in any way.
Q. Did this lead to the relapse that you were questioned about in your deposition?
A. It led to an idea and opportunity, and that very much led to relapse.
Q. All right. Again, you purposely injured yourself?
A. Yes, I did.
Q. All right. And you injured yourself badly.
A. I put my hand in an exercise – piece of exercise equipment and I dropped 45 pounds on my left hand.
Q. You broke your hand, didn't you?
A. Yeah.

1  in a company-wide, nationwide practice of claims handling." (Order at 22.) The Court found
2  that this factor weighed in favor of reprehensibility and took that into consideration in its
3  analysis.  By arguing that the Court did not give this factor enough weight, Plaintiff
4  essentially asks the Court to "to rethink what the court had already thought through – rightly
5  or wrongly." See Defenders of Wildlife, 73 F.Supp.2d at 1115.  Such a request is not
6  grounds for a Motion for Reconsideration, and the Court will not afford more weight to this
7  factor, which it has already concluded goes toward reprehensibility.

### 3. Fifth factor: Whether harm resulted from intentional malice, trickery, or deceit, or was a mere accident

10  The final factor a court consider in the reprehensibility analysis is whether the harm
11 resulted from intentional malice, trickery, or deceit, or was a mere accident. Gore, 517 U.S.
12 at 576-77.  Plaintiff contends that the Court erred when it concluded that this factor does not
13 weigh in favor of reprehensibility.  In support of this assertion, Plaintiff cites Hangarter v.
14 Provident Life & Accident Ins., 373 F.3d 998, 1014 (9th Cir. 2004), and states that the
15 Hangarter defendant's "bad faith techniques" are "the same techniques deployed in this case."
16 (Mot. at 6.)  However, the Court finds the defendant's actions in Hangarter distinguishable
17 from those of Defendants in this case.  The defendant in Hangarter not only terminated the
18 insured's benefits, "it attached [the insured's] bank account for the insurance premiums, until
19 the account was drained, at which point the company cancelled her policy." Id. at 1005.
20 Defendants in this case did nothing of the sort to Plaintiff's bank account.  In Hangarter, the
21 Ninth Circuit did not specifically indicate what action on the part of the defendant constituted
22 "deceit."  The facts of each bad faith case are unique, and the facts of this case are materially
23 different from the facts of Hangarter.  The Court's previous conclusion that this factor does
24 not weigh in favor of reprehensibility stands.

### 4. Conclusion as to reprehensibility

26  Although Plaintiff suffered a self-induced hand injury and relapsed, the Court
27 concludes that his injuries were primarily due to emotional distress or economically-related
28 and that a more modest award will serve the State's goals of punishment and deterrence. The

- 4 -

1  Court's previous conclusion that Defendants' conduct was reprehensible therefore remains
2  unchanged.  Plaintiff urges this Court to alter its analysis of just how reprehensible the harm
3  caused by Defendants was.  However, the Court, after carefully reviewing the Record and
4  Plaintiff's Motion, again concludes that Plaintiff's injuries were, for the most part, due to
5  emotional distress or economically-related, that appropriate weight was given to the Court's
6  finding that Defendants' actions were part of a nationwide practice, and that Defendants'
7  actions, though not a mere accident, did not constitute malice, trickery or deceit.  The Court
8  found Defendants' conduct to be reprehensible, but also concluded that a punitive damages
9  award of less than $15 million would achieve the State's goals of punishment and deterrence.
10 The Court's position on reprehensibility has not wavered.

**B.  Guidepost 2 of the <u>Gore</u> analysis: Ratio of compensatory to exemplary damages**

Plaintiff next argues that the Court "disregarded" Ninth Circuit precedent when it concluded that a ratio of 1.5-to-1 was appropriate in this case.  Plaintiff cites <u>Hangarter</u> and <u>Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists</u>, 422 F.3d 949 (9th Cir. 2005) in support of his contention.  First, Plaintiff stresses that the Ninth Circuit upheld a 2.6-to-1 ratio in <u>Hangarter</u> as being "well within the Supreme Court's suggested range for constitutional punitive damages awards." 373 F.3d at 1015.  The Court notes, however, that the <u>Hangarter</u> court then quoted <u>State Farm Mut. Auto Ins. Co. v. Campbell</u>, 538 U.S. 408, 425 (2003) that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution." <u>Hangarter</u>, 373 F.3d at 1015.  Thus, the Ninth Circuit found that 2.6-to-1, which is obviously a single-digit multiplier, comported with due process.  In so finding, the Ninth Circuit did not hold or imply that a ratio of 2.6-to-1 was required in cases of this sort.[2]  Rather, the Ninth Circuit found that the ratio was within the range of <u>State Farm v. Campbell</u>.

---

[2] The Court also notes that the facts of <u>Hangarter</u> appear to be more egregious than that of this case, thus presumably warranting a different ratio.

- 5 -

1  Like Hangarter's ratio of 2.6-to-1, this Court's ratio of 1.5-to-1 also employs a single-digit

2  multiplier and therefore also falls within the State Farm constitutional range.

3        Next, Plaintiff underscores the Planned Parenthood case, in which the Ninth Circuit

4  discussed a 4-to-1 ratio. Plaintiff notes the following language from Planned Parenthood,

5  which the Court quotes in its entirety here:

6      In cases where there are significant economic damages and punitive damages
    are warranted but behavior is not particularly egregious, a ratio of up to 4 to
7      1 serves as a good proxy for the limits of constitutionality. See, e.g., State
    Farm, 538 U.S. at 425, 123 S.Ct. 1513 (acts of bad faith and fraud warranted
8      something closer to a 1 to 1 ratio). In cases with significant economic
    damages are more egregious behavior, a single-digit ratio greater than 4 to 1
9      might be constitutional. [citing cases involving racial discrimination]

10  422 F.3d at 962.

11        Plaintiff argues that "it is difficult to see how a ratio below 4:1 comports with the

12  Ninth Circuit's post-Campbell framework [i.e., Hangarter and Planned Parenthood] given the

13  egregious nature of the conduct at issue here." The Court disagrees. As quoted above, the

14  Ninth Circuit held in Planned Parenthood that a ratio of *up to* 4-to-1 serves a good proxy for

15  the limits of constitutionality. Id. The Court's ratio of 1.5-to-1 therefore falls under the "up

16  to" 4-to-1 ratio guidelines.

17        The Supreme Court noted in State Farm that "[w]hen compensatory damages are

18  substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the

19  outermost limit of the due process guarantee." 538 U.S. at 425. Plaintiff's compensatory

20  damages, which total $2,009,028, are substantial. See Bains LLC v. Arco Prods. Co., 405

21  F.3d 764, 776 (9th Cir. 2005) (finding $50,000 punitive damages award to be substantial).

22  However, Plaintiff emphasizes the Ninth Circuit's observation in Hangarter that "State Farm's

23  1:1 compensatory to punitive damages ratio is not binding." 373 F.3d at 1014. Although the

24  Court agrees that ratio is not binding, the Court also notes that in Planned Parenthood, the

25  Ninth Circuit described State Farm in a parenthetical as holding that "acts of bad faith and

26  fraud warranted something closer to a 1 to 1 ratio." Planned Parenthood, 422 F.3d at 962.

27  Thus, in the framework provided by Hangarter and Planned Parenthood, the Ninth Circuit

28  has held that in cases involving economic damages and less egregious acts, a ratio of *up to*

- 6 -

4-to-1 would likely be constitutional. Furthermore, while courts are not required to assign a 1-to-1 ratio, a ratio closer to 1-to-1 is warranted in bad faith or fraud cases.

Given the facts of this case and the controlling case law, the Court concluded that a ratio of 1.5-to-1 was appropriate and constitutionally sound. The Court is confident that its ratio falls within the range provided by State Farm and the Ninth Circuit cases that followed. Consequently, the Court will not alter its ratio.

Finally, with respect to the ratio assigned by the Court, Plaintiff argues that this Court must remit Plaintiff's punitive damages award to the "constitutional maximum" amount of punitive damages allowed. (Mot. at 14.) Plaintiff asserts that Leatherman Tool Group, Inc. v. Cooper Industries, Inc., 258 F.3d 1146, 1151 (9th Cir. 2002) explains that "when a court determines that an award is constitutionally excessive[,] it should determine the constitutional maximum on the basis of the existing record and reduce the award to that amount." (Mot. at 14.) Thus, Plaintiff contends that the punitive damages award in this case should be no less than a 4-to-1 ratio, or $8 million, pursuant to Planned Parenthood. (Id.)

The Court disagrees with Plaintiff's contention. Leatherman was decided without the benefit of State Farm v. Campbell, in which the Supreme Court explicitly stated "We decline again to impose a bright-line ratio which a punitive damages award cannot exceed." 538 U.S. at 425. The Supreme Court noted in State Farm that 2-, 3- or 4-to-1 ratios "are not binding[;] they are instructive." Id. In Hangarter, which followed State Farm, the Ninth Circuit quoted State Farm's observation that "there are no rigid benchmarks that a punitive damages award may not surpass." Hangarter, 373 F.3d at 1015. It logically follows, therefore, that a notion of a "constitutional maximum" does not comport with State Farm and its progeny. The Court further notes that the Ninth Circuit has made no mention of a "constitutional maximum" since State Farm was decided.[3] The Ninth Circuit in Planned

---

[3] The Court notes that in Bains, the Ninth Circuit found that "controlling Supreme Court authority therefore *implies* a punitive damages ceiling." 405 F.3d at 776 (emphasis added). However, the Ninth Circuit was careful to observe that controlling case law "implies" or "suggests" a ratio that may not be exceeded except in the rare case. Id. at 776-

- 7 -

1 Parenthood noted that *up to* a 4-to-1 ratio serves as a good proxy for the limits of
2 constitutionality, but it is not clear to the Court that 4-to-1 is the precise constitutional limit,
3 given the Ninth Circuit's "up to" language and its immediate cite to State Farm in which it
4 noted that a ratio closer to 1-to-1 is warranted in bad faith cases.  Thus, the Court disagrees
5 with Plaintiff's contention that a bright-line "constitutional maximum" must be awarded by
6 this Court, in light of State Farm and its progeny.

7 In this case, the jury's award of $15,000,000 in punitive damages was excessive.  The
8 Court, with the appropriate amount of deference to the jury, has found the Defendants'
9 conduct reprehensible.  The Court however, has concluded that a more modest punitive
10 damages award would adequately serve the State's goals of deterrence and punishment.  Also,
11 the Court's ratio of 1.5-to-1 is within the constitutional parameters of State Farm, particularly
12 in light of the substantial compensatory damages awarded to Plaintiff.  Finally, the penalties
13 afforded to similar conduct under Arizona law are far less than the punitive damages awarded
14 in this case.  The Court, for the reasons set forth in this Order, declines to reinstate the jury's
15 excessive verdict or alter the remitted damages amounts.  Having examined its original Order
16 in this matter, the Court finds none of the extraordinary grounds that would justify granting
17 Plaintiff's Motion for Reconsideration.  Consequently, the Court denies Plaintiff's Motion for
18 Reconsideration.

19 Plaintiff also moves this Court for an expedited ruling on the Motion for
20 Reconsideration, as well as additional time in which to elect a new trial on damages or accept
21 remittitur.  The Court denies Plaintiff's Motion for Expedited Ruling as moot but, in order
22 for the parties to digest this decision, the Court grants Plaintiff's Motion to Extend Time.
23 Plaintiff shall have until July 7, 2006 to notify the Court of his choice to either accept the
24 remitted damages amounts or proceed to a new trial on damages.

25 //

26

27
28 77. The Court finds that language differs greatly from the strong "constitutional maximum" language used in the pre-State Farm case of Leatherman.

- 8 -

**CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration re Remittitur of Punitive Damages Award [Doc. No. 275] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Expedite Ruling on Plaintiff's Motion for Reconsideration and to Extend Time for Plaintiff to Notify the Court Whether He Elects to Accept Remittitur [Doc. No. 276] is **DENIED in part and GRANTED in part**. Plaintiff's Motion to Expedite Ruling is denied as moot, and Plaintiff's Motion to Extend Time is granted.

**IT IS FURTHER ORDERED** that Plaintiff shall have until **July 7, 2006** to notify the Court whether he elects to (a) accept the remittitur to a compensatory damage award of $1,200,000 in pain and suffering plus $809,028 in future policy benefits, and a punitive damage award of $3,000,000, for a total of $5,009,028 in damages, or (b) proceed to a new trial on the issue of damages.

DATED this 22nd day of June, 2006.

Stephen M. McNamee
United States District Judge